## Meadow Gold Dairies, Inc., v. Milk Control Commission

*Daniel Harter Swope*, for appellant.

*G. Clinton Fogwell*, for Pennsylvania Milk Control Commission.

RUPP, P. J., November 14, 1949.—This is an appeal from the action of the Milk Control Commission in refusing appellants' application for the revision or amendment of certain provisions of Official General Order No. A-326, issued August 24, 1949, to become effective September 1, 1949.

By special order of court, the appeal was permitted to act as a supersedeas.

Official General Order No. A-326 was promulgated after public hearing called at the instance of the commission for the purpose of taking testimony regarding the issuance of a general price order, and amends Official General Order No. A-247, regulating the Pittsburgh milk marketing area no. 2 (order no. A-247 had previously been amended, among others, by orders nos. A-290 and A-309).

The appeal petition sets forth that appellants are licensed milk dealers having places of business in area

no. 2, who are aggrieved by the order, and that the commission erred in refusing their application because:

By virtue of prices effective October 1, 1949, the order narrowed and decreased appellants' established spread or markup in buttermilk, skim milk and cream, in that it decreased the resale prices of skim milk and buttermilk sold in gallon and half-gallon containers and of fluid cream classified as a class 1 product, without a compensating decrease in the price to be paid producers for milk to be utilized as fluid cream and classified as a class 1 product; and further, that the foregoing prices were fixed without any evidence in the record relating to the resale prices of skim milk, buttermilk and cream, contrary to the provisions of the Milk Control Law of April 28, 1937, P. L. 417, as amended, 31 PS §700j-101, et seq.

Section 801, as amended, of the Milk Control Law, 31 PS §700j-801, reads, in part, as follows:

"The commission . . . after a hearing in which all interested persons shall be given reasonable opportunity to be heard . . . shall ascertain and maintain such prices for milk in the respective milk marketing areas as will be most beneficial to the public interest, best protect the milk industry of the Commonwealth and insure a sufficient quantity of pure and wholesome milk to the inhabitants of the Commonwealth, having special regard to the health and welfare of children residing therein.

"The commission shall base all prices upon all conditions affecting the milk industry in each milk marketing area, including the amount necessary to yield a reasonable return to the producer, which return shall not be less than the cost of production and a reasonable profit to the producer, and a reasonable return to the milk dealer or handler. In ascertaining such returns, the commission shall utilize a cross-section representa-

tive of the average or normally efficient producers and dealers or handlers in the area.

"The commission shall file at its office, with each order issued, a general statement in writing of the findings of fact in support of, and the reasons for, such order.

"The commission may, upon its own motion or upon application in writing, from time to time, alter, revise or amend an official order . . . fixing prices to be charged or paid for milk. Before making, revising or amending any order . . . fixing prices to be charged or paid for milk, the commission shall hold a hearing . . ."

In Colteryahn Sanitary Dairy v. Milk Control Commission of Pennsylvania, 332 Pa. 15 (1938), the Supreme Court said (p. 20):

"Considering the duties of the Milk Control Commission with respect to the conduct of hearings, section 801 of the Act requires 'a hearing in which all interested parties shall be given reasonable opportunity to be heard' before orders shall be made fixing prices, relating to milk areas, and affecting other matters concerning the industry. It also provides that the scope of the hearing must be such as to enable the determination of such rates, areas, et cetera, as will be most beneficial to the public interest, best protect the milk industry, and secure a sufficient quantity of pure and wholesome milk for consumption, having special regard to the health and welfare of children. The Commission is required to base all prices upon all conditions affecting the milk industry in each milk marketing area, including in its consideration the amount necessary to yield a reasonable return to the producer and to the dealer. A general statement of findings of fact in support of, and the reasons for, each order is required to be filed with the order. The same procedure is required for changing or revising an order fixing

prices as that in promulgating it. It is the general intent and purpose of the Act that in the promulgation, revision or change of official orders fixing prices, a definite record should be made of all evidence produced before the Commission, and all matters upon which it bases its order. The production of proof before this administrative body is not subject to the strict rules of evidence, and the Commission may make its independent survey of the milk industry in the particular area to acquire a just and fair understanding of the problems before it. But the result of that survey should be placed on the record of the hearing before the Commission, and the parties who made the survey should be subject to such cross-examination as is proper. Interested parties should be accorded opportunity to test the reliability of the Commission's evidence before an order is promulgated, revised or changed."

Again, the court said (p. 27) :

"The Act does not set up any standard by which these prices may be fixed, but it lays down certain factual considerations that must be taken into account at the hearing. Any price must consider all the factors which, of necessity, enter into the conduct of the milk industry. The problem before the Commission in price-fixing, is to provide a fair return to producer and dealer, and to maintain a just consumers' price."

And again (p. 30) :

"We do not attempt to lay down any theory of fair return. It is the duty of the Commission to devise such a theory as will conform to the law, *basing its conclusion on sufficient evidence.*" (Italics supplied.)

And at page 33 :

"The Commission's reports or statements accompanying its orders discussed the different classifications of milk, and the prices for classes 1 and 1-A, with a certain price formula for other classes. It did not set forth sufficiently the basis upon which these prices

were fixed, except possibly for the market prices of the lower grades. Nor do we find in the evidence data upon which producers' return could be legally predicated."

In Local Union No. 205 v. Milk Control Commission, 55 Dauph. 254 (1944) this court said (p. 259) :

"There is undoubtedly authority for the Milk Control Commission to promulgate and establish a retail price differential for stores, provided the action of the Commission was taken in accordance with the procedural requirements of the Act and that there is competent and substantial evidence produced at the Hearing, from which Findings of Fact can be made, upon which to base its Order."

And at page 266:

"It is argued by counsel for the A. & P. Company, an intervenor, that the promulgation of the differential was merely the authorization of a reasonable trade practice. However, this trade practice involved fixing the price at which Class No. 1 milk could be sold in stores on a cash and carry basis, and it is essential that the Findings of Fact, upon which the Order was based, are predicated upon competent evidence."

From all the foregoing it is abundantly clear that before the commission may promulgate, change or revise an official order fixing prices, it must hold a hearing at which sufficient competent evidence must be produced from which the commission can make findings of fact in support of such prices. At the argument, counsel for the commission admitted that in the present case it fixed the resale prices of skim milk, buttermilk and cream although there was no evidence in the record relating to such prices.

The commission attempts to justify its action by contending that although by reason of the prices fixed it decreased appellants' spread in skim milk, buttermilk and cream, it did not decrease the over-all spread of appellants, in that it allowed increases in other

classes of milk products which more than compensated appellants for any decrease in the spread in cream, etc. Thus the commission maintains that it complied with the Milk Control Law and the above decision, in that it considered all conditions affecting the milk industry in the area involved and fixed prices providing a reasonable return to appellants, based on their business as a whole.

The difficulty with this contention is that the commission is confused as to the issue raised in this appeal. The issue is whether or not the commission, in promulgating, changing or revising official orders fixing prices, may fix particular prices for particular products without any evidence in the record as to such prices. The issue is not, as contended by the commission, whether the aggregate prices, as fixed, afford the dealer a reasonable return. We repeat, the commission may not fix any price, for any product, without first holding a hearing at which sufficient competent evidence is produced from which the commission can make findings in support of any such price. There being no evidence in the record before us as to the resale prices of skim milk, buttermilk and cream, it follows that as to such prices Official General Order No. A-326 is illegal and void.

And now, November 14, 1949, the entire record in this case is hereby remitted to the Milk Control Commission with directions to revoke, in accordance with this opinion, that portion of Official General Order No. A-326 which fixes the prices to be paid producers for milk utilized as fluid cream and classified as a class 1 product, and which fixes prices to be charged by milk dealers for skim milk and buttermilk sold in gallon and half-gallon containers, and for fluid cream classified as a class 1 product; the costs of this appeal to be paid by the commission.